| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK** | **FILED**<br>**CLERK**<br>**11/7/2025** |

------------------------------------------------------------X

TRN, LLC,

       *Plaintiff*,

       -against-

VENTURA AIR SERVICES, INC.,

       *Defendant*.

------------------------------------------------------------X

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**AND ORDER**

25-cv-05402 (JMW)

**A P P E A R A N C E S:**

    Harry Jay Hulings
    Jason Murray Davis
    **Davis & Santos, PLLC**
    719 S Flores St
    San Antonio, TX 78204

    Robert Maxwell Tanner
    Michael Tremonte
    **Sher Tremonte LLP**
    90 Broad Street, 23rd Floor
    New York, NY 10004
    *Attorneys for Plaintiff*

    Robert David Schulte
    **Schulte Booth, P.C.**
    14 N Hanson St
    Easton, MD 21601
    *Attorney for Defendant*

**WICKS,** Magistrate Judge:

    Before the Court in this breach of an aircraft lease case – which is at its nascent stage -- is a request for provisional remedies, namely, whether (1) the lessor should deposit the disputed

1

"termination fee" in Court pending resolution of the case, and if so, then (2) whether the aircraft should be returned to the lessor upon deposit of the funds.

Plaintiff TRN, LLC ("Plaintiff" or "TRN") commenced this action on September 25, 2025 against Defendant Ventura Air Services, Inc. ("Defendant" or "Ventura"), asserting claims for breach of contract, unjust enrichment, conversion, and replevin, and seeking damages pertaining to Defendant's alleged refusal to return the Bombardier Inc. CL-600-2Bi16 aircraft ("Aircraft") leased by TRN to Ventura pursuant to the parties Exclusive Aircraft Lease and Operating Agreement ("Agreement") executed on October 10, 2023. (*See generally* ECF No. 1.) Under the terms of the Agreement, Ventura was required to maintain the Aircraft in excellent working condition which, according to Plaintiff, Defendant failed to do and caused the Aircraft to fall into disrepair. (*Id.* at ¶¶ 1, 13, 23.) In light of this purported breach of the Agreement, Plaintiff exercised its right to terminate the Agreement on July 15, 2025, without payment of a termination fee. (*Id.* at ¶ 2.) Consequently, Ventura refused to return the Aircraft, effectively holding it "hostage" until TRN paid Ventura the termination fee. (*See id.* at ¶ 3.) Defendant filed an Amended Answer with Counterclaims against Plaintiff on November 5, 2023 for breach of the Agreement because of this refusal to pay the $300,000 termination fee, breach of the implied covenant of good faith and fair dealing, and fraud. (*See generally* ECF No. 23.)

The parties are presently before the Court on Plaintiff's motion requesting that the Court: (i) permit Plaintiff to place the funds to which Defendant claims it is entitled—the $300,000 termination fee—into an interest-bearing account designated by the Court; and (ii) enter an order under New York law to seize the Aircraft and return it to Plaintiff. (*See generally* ECF No. 12.) Defendant opposed on October 27, 2025 (ECF No. 17) and Plaintiff filed a reply on November 3, 2025 (ECF No. 22). Oral argument was heard on November 6, 2025.

Each of Plaintiff's requests is considered in turn.

### A. *Placing Funds in an Interest-Bearing Account*

Plaintiff requests that the amount in dispute—the $300,000 termination fee—be deposited with the Court pursuant to Fed. R. Civ. P. 67 and Local Civil Rule 67.1.[1] (*See* ECF No. 12 at p. 1.)

Federal Rule of Civil Procedure 67(a) provides: "If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of the court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it." "The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute . . . ." *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018) (citation omitted). Rule 67 effectively functions as a procedural mechanism that allows a party to use the court as an escrow agent but does not determine who is entitled to the money. *Id.*; *see Regisford v. Lockamy*, No. 23 Civ. 5928 (AKH), 2025 WL 1313372, at *1 (S.D.N.Y. May 6, 2025) (noting Rule 67 provides a place of safekeeping disputed funds pending the resolution of a legal dispute).

Indeed, courts maintain discretion to permit a party to deposit disputed amounts into the escrow-like account. *See, e.g., Kamel v. Prisco*, No. 23-cv-00033 (JLR), 2025 WL 315890, at *1 (S.D.N.Y. Jan. 28, 2025) (ordering that the disputed amount of the judgment be deposited pursuant to Rule 67 until the overarching dispute between the parties is resolved); *Multi-State Partnership for Prevention, LLC v. Kennedy*, No. 24-cv-00013 (JMW), 2024 WL 4424233, at *2

---

[1] Local Civil Rule 67.1 outlines the procedural and formal requirements of an order to deposit money in an interest-bearing account.

3

(E.D.N.Y. Oct. 4, 2024) (collecting cases permitting plaintiff to deposit the disputed monetary amounts with the court). Notably, however, Rule 67 "cannot be used as a means of altering the contractual relationships and legal duties of the parties." *Radha Geismann*, 909 F.3d at 541.

This Court, in *Kennedy*, granted the deposit of funds pursuant to Rule 67 under similar circumstances. There, plaintiff sought to deposit $60,000.00—the allegedly unpaid amount owed to defendant under its breach of contract counterclaim. 2024 WL 4424233, at *1. This Court determined that because $60,000 was a disputed amount owed to defendant, it was to be appropriately placed into the escrow-like account under Rule 67 pending the resolution of the litigation. *See id.* at *1-2. In doing so, this Court emphasized that Rule 67 is to be utilized to account for disputed funds among the parties while making no determination as to who was entitled to the money at that juncture. *See id.* at *3.

> Here, the Agreement explicitly states:
>
> In the event this Agreement is terminated during the Initial Term by Lessor (other than for breach by Lessee or as set forth in Section 17(a), ***Lessor will pay Lessee an early termination fee as follows ("Early Termination Fee") to Lessee*** within three (3) days of termination: $500,000 during the first year of the Initial Term, ***$300,000 during the second year of the Initial Term***, and $200,000 during the third year of the Initial Term. Lessee shall obtain the Early Termination Fee as liquidated damages. . . . Seller's right to retain the Early Termination Fee shall be the sole remedy available to Lessor in the event of a termination during the Initial Term, and Lessee waives any other remedies that may be available to Lessee at law or in equity.
>
> Upon the expiration or earlier termination of this Agreement and ***payment by Lessor of all amounts due hereunder***, (i) Lessee's rights with respect to the Aircraft hereunder shall immediately cease and (ii) Lessee shall return the Aircraft, logbooks, and associated items at Lessor's sole cost and expense to a location designated by Lessor within the continental United States, or, at Lessee's option, make the Aircraft available for return by Lessor.

(ECF No. 12-3 at ¶ 17(c), (d) (emphasis added)).

> Moreover, the Agreement provides that:
>
> [Ventura] covenants to keep the Aircraft free and clear of, and shall indemnify and hold harmless [TRN] from, all third-party levies, liens and encumbrances created by or through [Ventura] (except those to be discharged in the normal course of business). Notwithstanding the foregoing, [Ventura] shall have a lien upon and may retain possession of the Aircraft ***until all amounts due [Ventura] under this Agreement have been paid in full***.

(ECF No. 12-3 at ¶ 20 (emphasis added)).

Reading these provisions together, it is apparent that TRN is required to pay the Early Termination Fee to Ventura to satisfy TRN's obligations under the Agreement before Ventura relinquishes possession of the Aircraft. (*See* ECF No. 12-3 at ¶ 17(c) ("Lessor will pay Lessee an early termination fee . . . ."); ¶ 20 (noting Ventura may retain possession until all amounts due to Ventura are paid)). It follows, therefore, that the deposit of the $300,000 with the Court would not "alter[] the contractual relationships and legal duties of the parties," a prohibited purpose of Rule 67, because the $300,000 is not being paid to Ventura yet. *See Radha Geismann*, 909 F.3d at 541; *see also LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) (Rule 67 "shall not abridge, enlarge or modify any substantive right. The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties of the parties").

Additionally, like in *Kennedy*, the parties dispute Defendant's entitlement to the $300,000 termination fee as highlighted throughout Plaintiff's Complaint and Defendant's Counterclaim for breach of the Agreement. (*See* ECF No. 1 at ¶¶ 27, 29, 51; *see also* ECF No. 23 at ¶¶ 21-27, 33-36.) Under the Agreement, determining whether Defendant is entitled to the Early Terminate Fee hinges on a determination as to whether Defendant breached the Agreement—the basis for Plaintiff's lawsuit. (*See* ECF No. 12-3 at ¶ 17(c)). As such, "pending the resolution of this case,"

5

the disputed funds, like those in *Kennedy*, are to be appropriately placed in the escrow-like account under Rule 67. *See Kamel*, 2025 WL 315890, at *1 (permitting defendant to deposit the disputed amount of the judgment pursuant to Rule 67 with the Court "while the dispute between Plaintiff and [Defendant] as to the charging lien is resolved").

Further, at oral argument on Plaintiff's motion, counsel for both sides consented to the deposit of the $300,000 in an interest-bearing account.[2] Accordingly, the Court finds that Plaintiff's deposit of $300,000 pursuant to Rule 67 appropriate and, therefore, **GRANTS** that branch of Plaintiff's motion.

### B. *Seizure of the Aircraft and Return to Plaintiff*

Plaintiff additionally seeks a seizure of the Aircraft pursuant to Federal Rule of Civil Procedure 64 and Article 71 of New York Civil Practice Law and Rules ("CPLR"). (*See* ECF No. 12 at p. 1.) Fed. R. Civ. P. 64 "permits federal litigants to seek an order of attachment to secure satisfaction of a potential judgment in accordance with the laws of the state in which the district court sits." The property to be seized in this action, the Aircraft, is chattel. *Canal Air, LLC v. El Transportation Co., LLC*, No. 3:13-cv-334 (MAD/DEP), 2013 WL 12191961, at *6 (N.D.N.Y. Apr. 22, 2013). As such, "Article 71 of the CPLR, entitled Recovery of Chattel, is such a state-law remedy." *Bank of America, N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 71 (W.D.N.Y. 2018) (citation omitted). Pursuant to NY CPLR § 7102, "[a]n application for an order of seizure must

---

[2] During argument on Plaintiff's motion on November 6, 2025, counsel for Plaintiff directed the Court to *Big Lots Stores, Inc. v. Gray Highway Partners, LLC*, No. 5:05-cv-147 (CAR), 2005 WL 8153042 (M.D. Ga. Oct. 17, 2005), a case cited in its Reply. (*See* ECF No. 22 at p. 7.) The decision in *Big Lots* only furthers this Court's Rule 67 conclusion. Indeed, in *Big Lots*, the court granted the motion under Rule 67 after noting that the "purpose of the litigation is to determine what the true benefit of its bargain was" and, at the conclusion of the case, "each party will receive the amount to which it is entitled under the contract." *Big Lots*, 2005 WL 8153042, at *2. The same holds true here considering neither party stands to suffer any detriment by placing the funds in an escrow-like account under Rule 67 and, at the end of the case, "each party" would receive what it is entitled to under the Agreement.

6

be accompanied by an affidavit that identifies the chattel; states the plaintiff's entitlement by virtue of the facts set forth in an affidavit and the defendant's wrongful possession of the chattel; identifies whether an action to recover the chattel has been filed and if the defendant has been served, is in default, or has appeared; the chattel's value; and that plaintiff is not aware of any defense to its claim." *Id.* (citing CPLR(c)(1)-(4), (6)).

Here, Plaintiff submits the Affidavit of Toby Neugebauer, CEO of TRN ("Affidavit"), and maintains that this Affidavit satisfies the requirements under CPLR § 7102. (*See* ECF No. 12-1 at p. 10). The Affidavit meets *some* of § 7102(c)'s requirements -- that an action was commenced to recover the chattel, the market value of the chattel, and noting Defendant's appearance or default in the action (ECF No. 12-2, Neugebauer Aff. at ¶¶ 10, 11, 16) – but not all. Specifically, support for Plaintiff's legal entitlement to the Aircraft and whether Defendant's possession over the Aircraft is wrongful, however, is lacking.

While the Affidavit mentions that Ventura "failed to properly service, maintain, and repair the Aircraft," it supports this contention by referencing "the necessity of emergency repairs to the Aircraft after a flight to Colorado and warning lights on the Aircraft indicating the need for repairs." (*Id.* at ¶ 5.) The Affidavit proceeds to outline and cite several letters sent by TRN's counsel to Ventura's counsel requesting that the Aircraft be returned to TRN (*see id.* at ¶¶ 11-12) but again does not set forth the facts underlying *whether* the possession was even wrongful, *why* Defendant's possession is wrongful, or *who* determines what is considered "wrongful" under the circumstances. *See Canal Air, LLC*, 2013 WL 12191961, at *6 (emphasizing that Article 71's primary purpose is to "restore possession of a chattel to the person from whom it was wrongfully taken"); *see also Indus. Nat. Bank of Rhode Island v. Butler Aviation Intern., Inc.*, 370 F. Supp. 1012, 1015 (E.D.N.Y. 1974) (holding the defendant did not

7

"wrongfully" withhold the airplane from plaintiff when defendant possessed the plane in good faith with a disputed monetary claim and refused to return the plane to plaintiff before payment).

The Agreement itself seemingly refutes any statement that Ventura's possession is wrongful. Indeed, pursuant to the Agreement, Ventura is entitled to retain possession *until* all amounts due under the Agreement have been paid in full. (*See* ECF No. 12-3 at ¶ 20.) Plaintiff repeatedly admits that all amounts due under the Agreement have not yet been paid. (*See* ECF No. 12-2, Neugebauer Aff. at ¶ 17; ECF No. 12-1 at pp. 8, 10.) Moreover, ordering the Aircraft to be transferred to Plaintiff at this juncture would require the Court to determine the merits of the entire action which centers around an alleged breach of contract—a plainly fact-intensive inquiry—before reaping the benefits of discovery. *See, e.g., Rathgaber v. Town of Oyster Bay*, 492 F. Supp. 2d 130, 138-39 (E.D.N.Y. 2007) (finding the order to show cause that sought "the ultimate relief, and not provisional injunctive relief" improper); *Sueno Fitness, Inc. v. OH Steele Fitness, LLC*, No. 1:23-cv-415, 2023 WL 6929729, at *7 (S.D. Ohio Oct. 19, 2023) (concluding that the ultimate form of relief sought in a case involving the lease and purchase of equipment differed than what the provisional relief was, thereby making the provisional relief proper). Indeed, whether Defendant acted wrongfully is the crux of the entire case. Payment into escrow, as ordered above, is not "payment in full" to Ventura.

Accordingly, because Plaintiff has not met all the requirements listed under § 7102(c), Plaintiff's motion for an order of seizure of the Aircraft is **DENIED**. *See Cahill v. McInnis*, No. 06 Civ. 441 (KNF), 2007 WL 1174827, at *3 (S.D.N.Y. Apr. 18, 2007) (denying motion for a seizure of chattel where, *inter alia*, plaintiff's affidavit did not establish its possession over the chattel or that the chattel was wrongfully held by defendant).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Order to Show Cause (ECF No. 12) is **GRANTED** in part and **DENIED** in part as follows: As for Plaintiff's request to deposit funds pursuant to Rule 67, Plaintiff may deposit, pursuant to any instructions by the Clerk of this Court, into its registry the amount of three-hundred thousand dollars and no cents ($300,000 USD), which should, pursuant to law, earn interest on behalf of Plaintiff, to be held pending the resolution of this matter and distributed by further order of this Court. As for Plaintiff's request for an order of seizure of the Aircraft, that request is denied. The parties are further directed to comply with the dates and deadlines set forth in this Court's Scheduling Order entered on November 6, 2025.

Dated: Central Islip, New York
    November 7, 2025

**S O   O R D E R E D:**
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge
