**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
TRN, LLC,

                 *Plaintiff*,

          -against-

VENTURA AIR SERVICES, INC.,

                 *Defendant*.
-------------------------------------------------------------X

                        **MEMORANDUM**
                        **AND ORDER**

                       25-cv-05402 (JMW)

**A P P E A R A N C E S:**

    Harry Jay Hulings
    Jason Murray Davis
    **Davis & Santos, PLLC**
    719 S Flores St
    San Antonio, TX 78204

    Robert Maxwell Tanner
    Michael Tremonte
    **Sher Tremonte LLP**
    90 Broad Street, 23rd Floor
    New York, NY 10004
    *Attorneys for Plaintiff and Counter Defendant*

    Robert David Schulte
    **Schulte Booth, P.C.**
    14 N Hanson St
    Easton, MD 21601
    *Attorney for Defendant and Counter Claimant*

**WICKS,** Magistrate Judge:

Plaintiff TRN, LLC ("TRN") commenced this action on September 25, 2025 against

Defendant Ventura Air Services, Inc. ("Ventura"), asserting claims for breach of contract, unjust

enrichment, conversion, and replevin, and seeking damages pertaining to Ventura's alleged

1

refusal to return the Bombardier Inc. CL-600-2Bi16 aircraft ("Aircraft") leased by TRN to Ventura pursuant to the parties' Exclusive Aircraft Lease and Operating Agreement ("Agreement"). (*See generally* ECF No. 1.)

The parties are before the Court on TRN's partial motion to dismiss two of Ventura's Counterclaims for breach of the implied covenant of good faith and fair dealing (Count II) and fraud (Count III) pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 32.) For the following reasons, TRN's partial motion to dismiss (ECF No. 32) is **GRANTED**.

## BACKGROUND

The parties entered into the Agreement on October 10, 2023 through which TRN leased the Aircraft to Ventura for a term of three years. (ECF No. 1 at ¶¶ 8, 11.) Through the Agreement, Ventura possessed the right to use the Aircraft as needed in its air charter and commercial carriage business. (*Id.* at ¶ 11.) In exchange, Ventura was required to pay TRN a monthly fixed lease payment of $10,000 per month. (*See id.* at ¶ 12.) Under the terms of the Agreement, Ventura was also required to maintain the Aircraft in excellent working condition which, according to TRN, Ventura failed to do and caused the Aircraft to fall into disrepair. (*Id.* at ¶¶ 1, 13, 23.)

The Agreement further provides that it may be terminated or suspended by either party if certain conditions are not met and that TRN may terminate the Agreement without payment of an early termination fee for events like "breach or default of any of the conditions of the Agreement or any other agreement between the parties by Ventura and the failure of Ventura to cure or remedy such breach or default within ten days after receipt of notice thereof from TRN." (*Id.* at ¶ 15 (cleaned up) (referencing Agreement at § 17(b)). TRN, under the Agreement, may also terminate the Agreement "for any or no reason with 90 days advanced written notice" to Ventura but then must pay Ventura an "Early Termination Fee" of $500,000 during the first year,

2

$300,000 during the second year, and $200,000 during the third year. (*Id.* at ¶ 16 (referencing Agreement at § 17(c)). Upon the expiration or early termination of the Agreement, and payment by TRN, Ventura was obligated to "return the Aircraft, logbooks, and associated items at [TRN's] sole cost and expense" or "make the Aircraft available for return by [TRN]." (*Id.* at ¶ 17 (referencing Agreement at § 17(d)).

On July 14, 2025, TRN contends that Ventura's failure to "maintain, repair, and service the Aircraft became apparent" when Ventura cited to "a mechanical problem" which prevented TRN's principal, Toby Neugebauer ("Neugebauer") and several of his guests, from timely departing Aspen, Colorado and caused them to miss their "important business function" in Pittsburgh, Pennsylvania. (*Id.* at ¶ 18.) The following day, on July 15, 2025, TRN sent Ventura a letter stating that Ventura breached the Agreement by failing to maintain the Aircraft in accordance with the Agreement's terms. (*Id.* at ¶ 19 (referencing "Ventura's substandard maintenance and related mechanical failures")). TRN also cites to additional "mechanical failures, substandard maintenance, system failures . . . [and] deteriorating exterior paint" on the Aircraft caused by Ventura's lack of care. (*Id.* at ¶¶ 19-22.) Ventura contends that it "did not fail to perform any required maintenance" and that the Aircraft was in the same condition as it was when sent by TRN. (ECF No. 23, Counterclaims at ¶¶ 19-20.)

Considering this purported breach of the Agreement, TRN exercised its right to terminate the Agreement pursuant to Section 17 on July 15, 2025, without payment of a termination fee. (ECF No. 1 at ¶¶ 2, 25; ECF No. 23, Counterclaims at ¶¶ 23-24.) Consequently, Ventura refused to return the Aircraft, effectively holding it "hostage" until TRN paid Ventura the termination fee pursuant to Section 20 of the Agreement which provides that "[Ventura] shall have a lien upon

and may retain possession of the Aircraft until all amounts due [Ventura] under this Agreement have been paid in full." (ECF No. 1 at ¶ 3; ECF No. 23, Counterclaims at ¶¶ 26-28.)

Accordingly, TRN asserts several causes of action, namely, for breach of the Agreement, unjust enrichment, conversion, and replevin. (*See* ECF No. 1 at pp. 8-11.) On November 5, 2025, Ventura filed its Amended Answer with Counterclaims against TRN for breach of the Agreement because of TRN's refusal to pay the $300,000 termination fee, breach of the implied covenant of good faith and fair dealing, and fraud. (*See generally* ECF No. 23.) Nearly one month later, on December 10, 2025, TRN filed a motion for a pre-motion conference regarding TRN's anticipated partial motion to dismiss Ventura's Counterclaims for breach of the implied covenant of good faith and fair dealing and for fraud pursuant to Rule 12(b)(6). (*See* ECF No. 29.) The Court then waived the pre-motion conference requirement and directed the parties meet and confer and submit a proposed briefing schedule on TRN's anticipated partial motion to dismiss. (Electronic Order dated December 11, 2025.) On December 17, 2025, the Court adopted the parties' briefing schedule. The parties then bundle filed their motion papers on January 16, 2026. (ECF No. 32.) The Court held Oral Argument on TRN's motion on March 12, 2026. (*See* Electronic Order dated January 23, 2026.)

## **LEGAL FRAMEWORK**

"In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint." *Zurich American Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021); *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 367 (W.D.N.Y. 2018) ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint.") (internal marks omitted) (citation omitted).  The Court must assume the truth of the allegations.

4

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A counterclaim is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Naor World Media Films, Inc. v. JC Production*, No. 22 Civ. 8267 (AT), 2024 WL 1177977, at *2 (S.D.N.Y. Mar. 19, 2024) (quoting *Twombly*, 550 U.S. at 558).

"When evaluating a motion to dismiss counterclaims for failure to state a claim, a court 'must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party.'" *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021) (citation omitted); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) (noting that when considering a motion to dismiss under 12(b)(6), the court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff"). However, this tenet does not apply to mere legal conclusions, and a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citation omitted).

## **DISCUSSION**

TRN seeks dismissal of Ventura's counterclaim for breach of the implied covenant of good faith and fair dealing on a theory that this counterclaim is entirely duplicative of Ventura's

5

breach of contract counterclaim. (*See* ECF No. 32-1 at pp. 10-13.) Moreover, TRN moves to dismiss Ventura's fraud counterclaim because Ventura fails to plead sufficient facts to make out a prima facie case under New York law. (*See id.* at pp. 13-18.) Ventura vigorously opposes, arguing that it may plead its implied covenant counterclaim in the alternative and thus should not be dismissed. (*See* ECF No. 32-2 at pp. 6-7.)

Although in opposition Ventura avers that it has sufficiently "pleaded fraud with sufficient particularity" to survive dismissal (*see id.* at pp. 7-9), at oral argument counsel stipulated to withdraw the fraud claim, without prejudice.

i.      **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under New York Law, there is an implied covenant of good faith and fair dealing attendant to all contracts. *Khan v. K1 Investment Management LLC*, 2:24-cv-07860 (JMW), 2025 WL 1808725, at *10 (E.D.N.Y. July 1, 2025) (citing *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance"); *see also 511 West 232nd Owners Corp v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). To state a claim for breach of this implied covenant, a plaintiff must plead that: (1) the defendant owes the plaintiff a duty to act in good faith and conduct fair dealing, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages. *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183 (S.D.N.Y. 2019) (cleaned up) (citation omitted). "Broadly stated, the implied covenant 'embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract' " *Singh v. City of New York*, 217 N.E.3d 1, 5 (N.Y. 2023) (quoting *Jennifer Realty Co.*, 773 N.E.2d at 500); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 696 (S.D.N.Y. 2018) (noting the implied covenant

6

encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included.") (citation omitted).

However, "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim is also pled based on the same facts." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 Fed. App'x. 108 (2d Cir. 2012) (summary order). It follows, therefore, that "[a] claim for a breach of good faith and fair dealing survives a motion to dismiss 'only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract.'" *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 177 (E.D.N.Y. 2024) (quoting *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (applying New York law)). Indeed, "[u]nder New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant." *Davis v. ODN I GmbH*, No. 24-cv-01463 (MMG), 2025 WL 964891, at *5 (S.D.N.Y. Mar. 31, 2025) (referencing *Casalino Interior Demolition Corp. v. Custom Design Data, Inc.*, 653 N.Y.S.2d 35, 36 (App. Div. 2d Dep't 1997)).

Where duplicative or redundant, the breach of the implied covenant of good faith and fair dealing claim will be dismissed, allowing the breach of contract claim to survive. *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (holding that "because the facts underlying both [breach of contract and breach of the implied covenant] claims are identical and the [plaintiff] seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative"); *see also Beck v. Metropolitan Bank Holding Corp.*, 747

F. Supp. 3d 442, 463-64 (E.D.N.Y. 2024) (dismissing claim for breach of the implied covenant of good faith and fair dealing when found to be duplicative of the contract claim).

Here, the facts underlying Ventura's Counterclaim for breach of the implied covenant of good faith and fair dealing are identical to those underlying its breach of contract Counterclaim. For example, Ventura avers that TRN's claims of maintenance failure are "pre-textual and designed to deny [Ventura] the benefits of the Parties' agreement, namely the Termination Fee." (ECF No. 23, Counterclaim at ¶ 39.) This precise failure to pay the termination fee also forms the basis for Ventura's breach of contract Counterclaim which Ventura has ironically labelled "Breach of Contract - Refusal to Pay Termination Fee". (*Id.* at ¶¶ 33, 35 ("TRN has refused to pay the termination fee"), ¶ 36 ("TRN's refusal to do so constitutes a breach of contract")). Indeed, like here,"[w]here a claim of breach of the implied covenant arises from the same facts as a separate claim of breach of an *express contractual provision* . . . the former should be dismissed as duplicative." *Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 261 F.R.D. 4, 9 (W.D.N.Y. 2009) (emphasis added) (collecting cases); *see Colgate-Palmolive Co. v. Lanfranchi North America, Inc.*, No. 1:18-cv-09982 (ALC), 2020 WL 5440554, at *7 (S.D.N.Y. Sept. 8, 2020) (dismissing implied covenant claim as duplicate of breach of contract claim because both claims relied on allegations about defendant's "failure to replace or satisfactorily repair the equipment as required by the terms of the contract").

Additionally, the damages sought on both Counterclaims are identical. In fact, under the implied covenant Counterclaim, Ventura contends that it suffered damages through TRN's failure to pay the $300,000 termination fee, the same damages that form the basis for its breach of contract Counterclaim as well. (ECF No. 23, Counterclaim at ¶¶ 33, 37, 39, 42-43). Though Ventura, in its implied covenant Counterclaim, asserts that it "has been damaged" as a result of

TRN's conduct, nowhere does Ventura allege, nor can the Court ascertain, how those damages are distinguishable than those suffered under its breach of contract Counterclaim. *See Khan*, 2025 WL 1808725, at \*10 (dismissing the breach of good faith and fair dealing counterclaims because "Defendant fail[ed] to adequately differentiate the requested relief" sought in the implied covenant counterclaim and the breach of contract counterclaim); *see also Davis*, 2025 WL 964891, at \*5 (dismissing a breach of covenant of good faith and fair dealing claim where damages under that cause of action were "intrinsically tied to" the damages requested for under a breach of contract claim).

Ventura's argument that it is "entitled to plead its implied covenant claim in the alternative" is also unpersuasive under the circumstances presented here. (ECF No. 32-2 at p. 7.) The Second Circuit has stated that the "anti-duplication" rule between breach of contract and breach of the implied covenant "'does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing' alongside a claim for express breach of contract when those claims 'are brought in the alternative.'" *Sorotzkin v. EmblemHealth Inc.*, 2023 WL 7383169, at \*2 (2d Cir. Nov. 8, 2023) (quoting *Fantozzi v. Axsys Techs., Inc.*, No. 07-CV-2667, 2008 WL 4866054, at \*7 (S.D.N.Y. Nov. 6, 2008)).

That means that courts have permitted a party to plead the implied covenant claim in the alternative only where the actions underlying the claim for breach of the implied covenant do not relate to, or allege a violation of, an express contractual provision forming the basis for the breach of contract claim. *See Sorotzkin*, 2023 WL 7383169, at \*3 ("[I]f the allegedly improper conduct did not breach an express contractual provision, that is precisely the circumstance in which a party may maintain a claim for breach of the implied covenant" in the alternative); *see also Titus v. UMG Recordings, Inc.*, No. 1:23-cv-00015 (JLR), 2023 WL 8039622, at \*11

(S.D.N.Y. Nov. 20, 2023) (permitting the implied covenant claim to be pled in the alternative to the breach of contract claim where plaintiff alleged that defendant "breached the implied covenant of good faith and fair dealing 'by secretly licensing its catalog to acquire an equity stake in Spotify" which related to no explicit contractual provision).  That is not what is presented here.

.Instead, Ventura alleges that TRN acted with pre-textual motives "designed to deny [Ventura] of he benefits of the Parties' Agreement, *namely the Termination Fee*." (ECF No. 23 at ¶ 39 (emphasis added)). In essence, Ventura's claimed-of misconduct relates expressly to explicit contractual provisions in the Agreement which form the basis of the breach of contract Counterclaim.  This is not the case where Ventura claims that TRN's conduct has prevented Ventura from performing or upholding its end of the contract. Rather, the crux of Ventura's implied covenant Counterclaim is that TRN has not complied with the Termination Fee, an express contractual provision under the Agreement that forms the precise basis for Ventura's breach of contract Counterclaim.

Accordingly, Ventura's breach of the implied covenant of good faith and fair dealing Counterclaim is dismissed under Rule 12(b)(6) as duplicative of Ventura's breach of contract Counterclaim.

### ii.    Fraud

Counsel for Ventura stipulated to withdrawal of the fraud counterclaim, without prejudice and with leave to renew should discovery uncover additional facts to support the current assertions.  If and when this fraud counterclaim is re-pled, however, it must nevertheless satisfy Rule 9(b).

Common law fraud in New York requires a plaintiff to allege "(1) a misrepresentation or a material omission of a material fact which was false and known by [the] defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who suffered an injury as a result of such reliance." *DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 24-1217, 2025 WL 863338, at *2 (2d Cir. Mar. 19, 2025) (summary order) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008)).

Allegations of fraud must also comply with Rule 9(b)'s heightened pleading requirements. *See VR Glob. Partners, L.P. v. Petroleos de Venezuela, S.A.,* No. 24-1176-CV, 2024 WL 4891271, at *3 (2d Cir. Nov. 26, 2024) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170–71 (2d Cir. 2015)). To comply with Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DM Manager*, 2025 WL 863338, at *2 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). Additionally, the Second Circuit requires a plaintiff to "plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). A "strong inference" of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Lerner*, 459 F.3d at 290–91).

Ventura's fraud Counterclaim asserts that TRN and Neugebauer still used the Aircraft after TRN's July 15, 2025 termination letter and did so with no intention of paying for those flights. (ECF No. 23, Counterclaim at ¶ 51.) Such conduct, as Ventura claims, "evidences such a

11

high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to civil obligations." (*Id.* at ¶ 50.) "In other words, TRN and Mr. Neugebauer acted out of spite" by conjuring up false claims of uncured maintenance failures but continued to use the Aircraft following these complaints. (*See id.* at ¶¶ 45, 48, 52.) Even if counsel for Ventura did not voluntarily withdraw the fraud Counterclaim, the fraud Counterclaim would fail for several reasons.

*First*, Ventura does not identify, let alone allege, any false or misleading statement that was made by TRN or Neugebauer. The only statement Ventura identifies is Neugebauer's statement to "Ventura personnel" that TRN had "no intention of paying the Termination Fee." (*Id.* at ¶ 47.) Nowhere does Ventura support its assertion that this statement was false or misleading. If anything, TRN's continued failure to pay the termination fee, which Ventura acknowledges itself, confirms the *veracity* of Neugebauer's statement rather than its falsity. *See id.* at ¶ 24 ("TRN has refused to pay the Termination Fee") ¶ 35 (same)); *see also Footbridge Ltd. v. Countryside Home Loans, Inc.*, No. 09 Civ. 4050 (PKC), 2010 WL 3790810, at *25 (S.D.N.Y. Sept. 28, 2010) (dismissing common law fraud claim because the pleading did not "allege a material, false representation").

Indeed, even assuming that it is Neugebauer's statement that he had no intention of paying the Termination Fee is the statement underlying Ventura's fraud Counterclaim, it is well-settled that a defendant is only liable for fraud rather than breach of contract "when he agrees to a contract with the present intention of not honoring the contract." *United States v. Shellef*, 732 F. Supp. 2d 42, 69 (E.D.N.Y. 2010); *Ccm Rochester, Inc. v. Federated Investors, Inc.*, 234 F. Supp. 3d 501, 507 (S.D.N.Y. 2017) (collecting cases); *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) ("A present expression of the intent to perform a future act is

actionable as fraud only if actually made with a preconceived and undisclosed intention of not performing it."). Here, Ventura neglects to indicate that at the time of forming the Agreement, Neugebauer or any other member of TRN had the intent to not pay the Termination Fee. In fact, during Oral Argument, counsel for Ventura admitted that he is not pleading a fraudulent inducement claim and that Neugebauer's statement was made *after* contract formation. As such, Ventura's complained-of conduct properly sounds in breach of contract, not fraud.

*Second*, Ventura fails to allege how TRN made a statement for the purpose of inducing reliance by Ventura. While Ventura avers that the "procurement of the post-July 15, 2025 flights" was done with an intent to defraud Ventura of the "substantial resources necessary to effect these flights," Ventura neglects to establish how it was induced by any statement made by TRN or Neugebauer about these flights. Nor is the Court able to decipher what reliance TRN was attempting to gain from the statement that it was not going to pay the termination fee. *See Baldeo v. Airbnb, Inc.*, 2025 WL 3152716, at *2 (2d Cir. Nov. 12, 2025) (concluding that because plaintiff did not plausibly allege that defendant "acted with an intent to induce, or that [plaintiffs] reasonably relied on any alleged misrepresentations" the fraud claim was dismissed under New York law); *see also DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393, 463 (S.D.N.Y. 2018) (dismissing fraud claim under New York law because based on the allegations it was "entirely unclear" how the statements were relied upon by plaintiffs).

*Third*, similarly, Ventura fails to allege facts demonstrating it relied upon any allegedly false statement. In order to state a fraud claim, "a plaintiff must have relied on the fraudulent statement 'in ignorance of its falsity.'" *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 19 (S.D.N.Y. 2009) (quoting *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987)); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 405 (S.D.N.Y.

13

2004) ("Reliance is necessary in order to demonstrate causation; where a plaintiff actually knew at the time a representation was made that it was false, she cannot claim to have relied on the truth of that representation, and any injury she suffers is therefore not attributable to the defendant."). Here, Ventura's fraud Counterclaim solely references the allegedly fraudulent actions taken by TRN and Neugebauer, but does not mention how Ventura relied upon these actions, let alone any statements. Nor does Ventura point to any detriment or harm it suffered as a result of these actions or statements.

*Fourth*, the pleading as it stands fails to offer anything more than conclusory assertions of motive and bad faith as to how TRN acted with fraudulent intent. Ventura alleges that TRN and Neugebauer knew and intended not to pay the Termination Fee and subsequently "acted out of spite," with a "high degree or moral turpitude," and "wanton dishonesty as to imply a criminal indifferent to civil obligations" in continuing to use the Aircraft after July 15, 2025. (ECF No. 23, Counterclaims at ¶¶ 45, 50, 52.)  Ventura's Counterclaim is devoid of facts necessary to support the heightened standard necessary to successfully plead common-law fraud under New York law. Moreover, Ventura does not establish, let alone allege, any "facts to show that defendants had both motive and opportunity to commit fraud" or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gardner v. Sensio Inc.*,645 F. Supp. 3d 310, 322 (S.D.N.Y. 2022) (dismissing claim of fraud for failure to meet Rule 9(b)'s heightened pleading requirement where the allegations were "generalized"); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (dismissing fraud claim because plaintiff only alleged defendant's fraudulent intent "in conclusory fashion").

Accordingly, Ventura's Counterclaim for fraud is deemed withdrawn, without prejudice and with leave to renew following discovery.

14

## CONCLUSION

For the foregoing reasons, TRN's motion to dismiss Ventura's two Counterclaims for breach of the implied covenant of good faith and fair dealing (Count II) and fraud (Count III) under Rule 12(b)(6) (ECF No. 32) is **GRANTED** and those claims are dismissed.

Dated:   Central Islip, New York
         March 12, 2026

                                        **SO ORDERED**,

                                        /S/ *James M. Wicks*

                                        JAMES M. WICKS
                                        United States Magistrate Judge

15